N. Y. 461, 24 N. E. 701; Grant v. Herald Co., 42 App. Div. 354, 59 N. Y. Supp. 84; McMahon v. Bennett, 31 App. Div. 16, 52 N. Y. Supp. 390), the rule is also stated that punitive damages may be awarded if the act complained of was done carelessly.   On reflection I am inclined to the view that this is sound, and that therefore, technically speaking, no error was committed in the charge in that regard.   When an act of such serious consequences as depriving a citizen of his liberty is committed carelessly, the act may well be characterized as reckless.   A want of prudence when the failure to exercise prudence may be of such grave consequences to the party arrested characterizes the act as committed in utter disregard of the rights of the party affected.   Here, however, it is clear that there existed no ill will, and there was no actual malice.   It is a case where actual malice did not exist, but constructive malice might be inferred or implied and imputed.   By the exercise of care and prudence, having in mind the consequences of a mistake by which an innocent man might be arrested, as was done, the arrest of the plaintiff would have been avoided.   Common prudence should have dictated an inquiry at the Manhattan Hotel concerning the plaintiff, and, had such inquiry been made, the name under which he was registered and his identity would have been revealed.   The case is one for compensatory damages for the humiliation and anguish of mind of the plaintiff, his loss of time, if its value be shown, and the expense to which he was subjected; and it is also a case where a jury, in the exercise of a wise discretion, should impose punitive damages, but not in an amount such as should be awarded if the defendant were actuated by ill will.

---

### WAGNER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   June 17, 1904.)

1. CARRIERS—INJURY TO PASSENGER—DANGEROUS CONDITION CAUSED BY MOB.
   Plaintiff, after purchasing a ticket of defendant railroad company, started towards his train, to reach which it was necessary to pass up a stairway, at the foot of which defendant maintained ticket-chopping boxes. These were located on the floor of a bridge over which defendant had no control, its only right there being to maintain the boxes.  The public had a right to pass over this part of the bridge.   Before plaintiff reached the boxes he was stopped by a crowd which was held in check by a chain which had been placed across the foot of the stairway, owing to a blockade on the elevated road above.  The boxes were fastened to the cement floor by braces and bolts, and had been in the same position for several years.  Plaintiff moved toward the stairway with the crowd, which had broken the chain and pushed over one of the boxes, stumbled over the fallen box, and was injured.  The box was so strongly fastened that the bolts had torn through the wood, which was in good condition.  *Held*, that defendant was guilty of no negligence.
   Hooker, J., dissenting.

Appeal from Special Term, Kings County.

Action by John Wagner against the Brooklyn Heights Railroad Company.   From a judgment for defendant, plaintiff appeals.   Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Melville J. France (James D. Bell, on the brief), for appellant.
I. R. Oeland, for respondent.

WOODWARD, J. If the law of negligence on the part of a common carrier is to stop short of absolute insurance after the purchase of a ticket, it seems to me that the defendant cannot be held liable under the conceded facts in this case. This accident occurred shortly after 5:35 in the afternoon of the 18th day of November, 1901. The plaintiff reached the New York end of the Brooklyn Bridge at the hour named, by way of the Third avenue elevated railroad. He purchased a ticket at one of the defendant's booths on the second or mezzanine floor of the bridge, and passed along, intending to go to his home by way of the Lexington avenue elevated railroad. To do this it was necessary to pass up a stairway to the floor above, and at the foot of this stairway the defendant maintained two ticket-chopping boxes, in charge of attendants, where the intending passenger deposited his ticket. After passing the ticket booth, which was 25 or 30 feet in front of these ticket-chopping boxes, the plaintiff went forward about 8 feet, when he was stopped by the crowd which had preceded him, and which was held in check at the foot of the stairway by a chain which had been placed across the passageway, owing to a blockade on the elevated road above. This floor of the bridge was not in control of the defendant. It was a public way, and was reached by various stairways, by elevated railroads, etc., and was open to persons desiring to walk over the bridge. It was in the police control of the city of New York, and the only right which the defendant had upon this floor of the bridge was to maintain the booth and the ticket-chopping boxes, which were subject to the regulation of the bridge authorities. There is some conflict of evidence as to whether the defendant's agent in the ticket booth ceased selling tickets as soon as it was known that there was a blockade which prevented people from passing up the stairway and across the bridge in the defendant's cars; but, in view of the fact that the defendant did not have control of the approaches, and it is well known that passengers do not always find it necessary to purchase tickets at each passage, there could be no element of negligence in selling tickets, especially as the learned counsel for the plaintiff asked to go to the jury upon the single question of whether the ticket-chopping box which caused the injury was securely fastened. The defendant's booth and its ticket-chopping boxes had been in the same situation for several years. The evidence showed that about 140,000 people cross on the bridge cars every 24 hours, and the testimony was undisputed that the ticket-chopping box, as to which negligence is alleged, was securely fastened to the cement floor by braces and bolts. No other accident, so far as appears, had ever happened in the manner of the one now under consideration, and the accident in question could not have happened except for the willful misconduct of the people who were there assembled, and who refused to obey the policemen who were there for the purpose of maintaining order. With things in this situation—with no reason, based upon a long experience, to expect that the crowd would do anything unlawful in its eagerness to reach the cars of the defendant—the plaintiff stood in the crowd, waiting for a move forward. He

knew the situation; knew that the chain was up, which was a reasonable precaution on the part of the defendant to prevent an overcrowding of its platform above, and which we have recently held was its duty. The crowd began to move forward, the plaintiff moving with it. When he reached the point where he intended to deposit his ticket, the box had been torn down by the crowd, which had burst through the chain barrier and pushed over the box, and the plaintiff was carried along by the crowd, stumbling over the fallen box, receiving the injuries for which he now seeks recovery.

Where is the negligence of the defendant? It was shown by undisputed evidence that the ticket-chopping box was set in a manner which was calculated to withstand any reasonable pressure which might be brought to bear upon it; that it was so strongly fastened that the bolts or screws were pulled through the wood, which was in good condition, in pushing the box over. It was not the duty of the defendant to erect boxes which could not be displaced by any amount of pressure. It owed the duty only of exercising reasonable care, and certainly, where the boxes were guarded primarily by a chain, and they were not erected for the purpose of a barricade, but merely for the purpose of receiving the tickets of the persons passing through, it cannot be said that there was any lack of reasonable care in the erection and maintenance of this box, when it was shown that it withstood sufficient pressure to draw bolts through good, sound wood. The box had stood there for years. Thousands of people had passed it, and it had never failed to answer all of the purposes for which it was designed. All of the experience of the defendant with this and similar boxes had never produced an accident, so far as appears from the evidence; and it was not bound to anticipate that a mob would override the chain barrier, crush down its ticket-chopping box, and produce a situation which would cause injury to its intended passengers. The defendant had no power to prevent the assembling of a mob at this point. If it had stopped selling tickets, there was nothing to prevent the crowd assembling under a constant pressure from the rear, and the defendant, in making an effort to prevent the overcrowding of its platform above, was justified, and, indeed, it was its duty to place a barrier across the stairway leading to the floor above. Having done this, and having maintained a servant there to guard the ticket-chopping boxes and to prevent the passage of persons to the stairway, in the absence of complete police control, it had done all that it was required to do; and if a mob, overriding these barriers and unlawfully crushing down the defendant's box, which had been securely placed, produced a condition resulting in the plaintiff's injury, the defendant cannot, in morals or in law, be held responsible for the result.

The cases of McGearty v. Manhattan R. Co., 15 App. Div. 2, 43 N. Y. Supp. 1086, and Dawson v. New York & Brooklyn Bridge, 31 App. Div. 537, 52 N. Y. Supp. 133, both proceed upon the theory that the defendant, having control of the premises, was responsible for an overcrowding of such premises endangering the lives or limbs of its passengers; but, in the case at bar the evidence is undisputed that the defendant was not in a position to control the assembling of the crowd. It was not responsible for the police control, and it was actually engaged

in an effort to prevent an overcrowding of the platform above, which was in its control, at the time when the crowd overrode its barriers and crushed down its box. It is not shown that the chain which was used was inadequate for the purpose, as measured by the experiences of the defendant. It is a matter of common knowledge that people at railroad stations and other public places do not, as a rule, undertake to disregard barriers of this character, or to forcibly push out of the way those who are lawfully in charge of ticket-chopping boxes or other necessary appliances; and the defendant, with its long experience, dealing with crowds under all the varying circumstances incident to moving thousands of people each day, had no reason to anticipate this unlawful conduct on the part of the people who were upon this public space of the Brooklyn Bridge, and who were subject to the police control of the city of New York. The ticket-chopping boxes appear from the evidence to have been placed, bolted, and braced with much more of care than would seem to be necessary, to literally tear out the bolts from sound wood before the box was overturned; and to say that a jury had the right to guess that there was any negligence in this respect is to hold the defendant as an insurer, not as one liable only for the exercise of reasonable care. The box was not there to withstand the onslaught of a mob; it was there, properly guarded by a chain across the passageway, to receive tickets as persons lawfully passed the point; and if a crowd, which the defendant could not limit or control, forced its way through the chain barrier and committed a trespass upon the defendant's property, it cannot be held to have been guilty of negligence toward one who constituted a part of this crowd. He was injured by the wrongful conduct of the crowd which had assembled, and which the defendant was powerless to prevent, and he has no grievance against the defendant.

The judgment dismissing the complaint should be affirmed, with costs. All concur, except HOOKER, J., who dissents.

HOOKER, J. (dissenting). At the close of the evidence a verdict was directed in favor of the defendant, and the plaintiff appeals from the judgment entered thereon. About 5:30 on the afternoon of the 18th day of November, 1901, the plaintiff left a Third avenue elevated train, in the borough of Manhattan, at the western end of the New York and Brooklyn Bridge, and passed along the mezzanine floor of that terminus of the bridge, intending to purchase a ticket of the defendant, and, after depositing his ticket in a receptacle secured to the floor, provided for that purpose, to proceed upstairs to the top floor of that structure, and there board one of the defendant's trains bound for the borough of Brooklyn. This receptacle, which is sometimes called a "chopping box," was situated a short distance from the foot of one of the flights or stairs leading from the mezzanine floor upwards to the platform, by means of which access to defendant's trains was had. No one might lawfully go within the space inclosed by the box and adjoining railings, or up the steps, without having purchased a ticket of the defendant which would permit him to travel on defendant's trains. About 25 feet from the box on the side opposite the direction of the stairs was located a booth, in which one of the defendant's agents was engaged in selling its tickets to those who wished to proceed up the stairs to the

trains above.   The defendant did not own the premises, but it exercised practically exclusive control to say who might go within the railing.   Without the railing, between the box and the booth, any one might lawfully be, for aught that appears, although it had long been devoted entirely, in hours of heaviest travel, to the use of defendant's passengers after they had purchased tickets, and before surrendering them.   On the day in question, plaintiff purchased a ticket, and proceeded about six feet from the booth where he bought it, toward the chopping box, when he found it impossible to go further because of the crowd which impeded him.   It seems that there had been a blockade upon defendant's tracks above, which prevented the regular running of trains, and the defendant's agents in charge of the box had been instructed to collect no more tickets and allow no one to pass until traffic had been restored.   In spite of the density of the crowd of people already congregated between this booth and the chopping box, the ticket seller continued to sell; the crowd between the booth and box became larger and larger, until it finally broke through the barrier near the box; the latter was overturned, although it had been firmly secured to the floor; and the plaintiff, unable to control his movements on account of the surging of the mass of humanity, was carried along, and, stumbling over the overturned box, fell and was injured.   This action is to recover for the injuries he sustained.

Had the accident occurred within the inclosure bounded by the box and railing, or upon the stairs, or the platform above, the facts would have been parallel with those in two cases decided in recent years in this department (McGearty v. Manhattan R. Co., 15 App. Div. 2, 43 N. Y. Supp. 1086; Dawson v. New York & Brooklyn Bridge, 31 App. Div. 537, 52 N. Y. Supp. 133), and I would have been content to direct a reversal in this case upon reciting the facts and referring to those cases.   There the injuries were received in places entirely under the supervision and control of the respective defendants.   In the McGearty Case the plaintiff was pushed off the defendant's elevated railway platform by the crowding of the people behind him, and he was precipitated to the street below.   In the Dawson Case the plaintiff's foot was crushed between the bumpers of the third and fourth cars of one of defendant's trains, where plaintiff was unable to govern his movements because of the excessive jam of human beings.   Here the accident occurred because of the crush of the crowd in a place where the defendant did not have exclusive control.   But the reasoning in those cases should be applied to this with equally controlling force.   While the space between the booth and the box was not a part of defendant's property, and over it defendant did not assume exclusive control, it was nevertheless a place where it invited its passengers to go; by the stationing of the booth and the box where they then stood, it induced the purchasers of its tickets to use the space; and, as far as these facts go, the duty of the common carrier to protect passengers is as great in a place not owned or controlled by it as in its own station, if it has adopted it as such, as was done here.   "The exposure of a passenger to a danger which the exercise of reasonable foresight would have anticipated, and due care avoided, is negligence on the part of a carrier." Lehr v. Steinway & Hunter's Point R. R. Co., 118 N. Y. 556, 561, 23

N. E. 889. "Common carriers, engaged in the transportation of large numbers of persons from stations at which such carriers control the admission of passengers to the vehicles of conveyance, are bound to exercise reasonable care, so to regulate the movements and disposition of those whom they thus undertake to transport as to preserve the safety of all. This rule is deducible from the general principles governing the law of common carriers." Dawson v. New York & Brooklyn Bridge, supra.

It was for the jury to say whether defendant exercised reasonable foresight and due care for the safety of the people who had already bought tickets, and those to follow, by selling more, and thereby inducing and inviting others to proceed toward the chopping box, and add their presence to the crowd and its effect to the possible danger therein, when a mere cessation of the traffic in transportation would, in all likelihood, have successfully and completely prevented any augmentation of the crowd. Without tickets, no one was permitted to pass the box, and without that commodity no one would have had any purpose to step beyond the booth. The conduct of the defendant in the continued distribution of tickets after the congregating of the crowd, and during the continued blockade above, was evidence of its negligence which should have been submitted for the jury's consideration. No serious contention is made that plaintiff was guilty of contributory negligence, as matter of law. I am convinced he was not.

The judgment should be reversed and a new trial granted; costs to abide the event.